IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ORLANDO GAITAN,** | : | |
| *Plaintiff*, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **SEPTA,** | : | No. 16-6193 |
| *Defendant*. | : | |

# MEMORANDUM

PRATTER, J.                                                                                                                                                 NOVEMBER 29, 2017

Before the Court is a motion for summary judgment filed by the Southeastern Pennsylvania Transportation Authority (SEPTA). The plaintiff, Orlando Gaitan, alleges workplace discrimination under both Title VII of the Civil Rights Act and Pennsylvania's analogue, the Pennsylvania Human Relations Act. Mr. Gaitan brings three claims: (1) workplace discrimination, (2) hostile work environment, and (3) retaliation. For the reasons outlined below, the motion is granted as to the workplace discrimination claim and hostile work environment claim, and granted in part and denied in part for the retaliation claim.

## BACKGROUND

Mr. Gaitan is of Colombian heritage, and began working at SEPTA in 1985 as a mechanic. At the time of the allegations, he was a first-class mechanic, the second highest of four mechanic levels. His duties involved building, repairing and testing engines. Mr. Gaitan alleges many claims against SEPTA that he argues amounted to unlawful discrimination, including unfair assignments and disproportionate overtime assignments between June 2014 and May 2016. In September 2014, Mr. Gaitan filed a complaint with the Pennsylvania Human Relations Commission (PHRC) against SEPTA, claiming that these assignments constituted

1

unlawful discrimination. Mr. Gaitan alleges that SEPTA retaliated against him by denying him overtime and increasing his heavy duty assignments, among other adverse workplace actions. More than 18 months later, on May 1, 2016, Mr. Gaitan retired from SEPTA because he claims the retaliatory harassment and work assignments forced him to resign. Mr. Gaitan argues that these circumstances amounted to a constructive retaliatory discharge.

## LEGAL STANDARD

### I. Summary Judgment

A court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson*, 477 U.S. at 248). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

The movant bears the initial responsibility for informing the Court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of

evidence to support the nonmoving party's case." *Id.* at 325. After the moving party has met the initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c).

Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## II. Title VII

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Summary judgment motions such as these require application of the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). This test first places the burden on the plaintiff to establish a prima facie case.

After a plaintiff makes a prima facie showing, "the burden shifts to the employer to provide a legitimate non-retaliatory reason for its conduct." *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017). If the employer succeeds on this point, then "the burden shifts back to the plaintiff 'to convince the factfinder both that the employer's proffered explanation was false . . . and that retaliation was the real reason for the adverse employment

3

action.'" *Id.* (citing (citing *Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006)). While the burden of *production* shifts under this analysis, the burden of *proof* always stays with the plaintiff. *Fuentes*, 32 F.3d at 763.

If the defendant can make this showing, a plaintiff then "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764; *see also Fakete v. Aetna, Inc.*, 308 F.3d 335, 339 (3d Cir. 2002).

To discredit the defendant's proffered reason, the plaintiff cannot simply show that the defendant's decision was wrong or ill-conceived. The plaintiff must show that there is a genuine dispute as to whether *discrimination* motivated the defendant's actions. *Id.* at 765. In other words, the relevant inquiry is the perception of the decision maker, not the plaintiff's view of his or her own performance. *Billet v. CIGNA Corp.*, 940 F.2d 812, 825 (3d Cir. 1991) (citations omitted); *see also Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509 (3d Cir. 1993) (pretext turns on the qualifications and criteria identified by the employer, not the categories the plaintiff considers important). Mr. Gaitan brings three claims of discrimination: (1) a national origin discrimination claim, (2) a hostile work environment claim, and (3) a retaliatory discharge claim.

**A. National Origin Discrimination**

To establish a prima facie case of discrimination, the plaintiff must demonstrate the existence of four elements: (1) he is a member of a protected class; (2) he was qualified for the position; (3) despite his qualifications, he was subject to an adverse employment action; and (4)

similarly situated nonmembers of the protected class were treated more favorably than the plaintiff. *Fuentes v. Perksie*, 32 F.3d 759, 763 (3d Cir. 1994).

### B. Hostile Work Environment

Title VII does not stop at employer discrimination, because the statutory language is not limited to economic or tangible discrimination. "The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent to strike at the entire spectrum of disparate treatment [including] requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (quoting 42 U.S.C. § 2000e–2(a)(1)). "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Id*. (internal citations omitted)

To meet the elements of a hostile work environment claim, the plaintiff must show "(1) the employees suffered intentional discrimination because of their [national origin], (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person of the same [national origin] in that position; and (5) the existence of respondeat superior liability." *Spain v. Gallegos*, 26 F.3d 439, 447 (3d Cir. 1994). This test includes both a subjective and objective standard. That is, it must have a detrimental effect on *this* plaintiff, and a *reasonable* plaintiff would have been detrimentally affected. *Id.*; *cf. Harris*, 510 U.S. at 20.

### C. Retaliatory Discharge

While Title VII prohibits those types of direct discrimination, it also prohibits retaliation for reports of discrimination. 42 U.S.C. § 2000e-3(a). To make a prima facie case of retaliation, "a plaintiff must show that (1) she engaged in a protected activity, (2) she suffered an adverse

5

employment action, and (3) there was a causal connection between the participation in the protected activity and the adverse action." *Carvalho*, 851 F.3d at 257 (citing *Moore*, 461 F.3d at 340–41).

## DISCUSSION

### I. National Origin Discrimination.

Mr. Gaitan alleges four different actions that constituted discrimination. First, Mr. Gaitan alleges discriminatory assignments by his employer. Second, he alleges that he was denied overtime because of his national origin. Third, he claims that he was denied training on the basis of his national origin. Finally, he claims that he was forced to remove an unauthorized locker, while employees (including Mr. Gaitan) were allowed to have personal refrigerators. None of these claims satisfy a prima facie showing of discrimination. Mr. Gaitan must show that (1) he is a member of a protected class; (2) he was qualified for the position; (3) despite his qualifications, he was subject to an adverse employment action; and (4) similarly situated nonmembers of the protected class were treated more favorably than the plaintiff. *Fuentes*, 32 F.3d at 763. There is no dispute as to whether Mr. Gaitan was a member of the protected class or qualified for his position. The only dispute is whether Mr. Gaitan was subjected to an adverse employment action and whether similarly situated nonmembers of the protected class were treated more favorably than Mr. Gaitan.

#### A. Discriminatory Assignments

Mr. Gaitan alleges that he was given discriminatory assignments that violate Title VII. In support, he makes two allegations. The first allegation is that SEPTA was giving Mr. Gaitan tasks that were destined to fail or impossibly hard. There is no evidence of this on the record, and

neither side disputes that Mr. Gaitan was qualified to perform any of these jobs. These general allegations fail to meet the requirement of an adverse employment action.

The second allegation happened in June 2014. Mr. Gaitan was assigned to inspect a bus, a job he claims is normally done by the lowest-ranking mechanics (third-class mechanics) and outside of his customary duties. Mr. Gaitan does not speak or write English well, and he struggled to fill out the form correctly. He also spent a significant amount of time (11 hours) working on the project. The form eventually had to be re-written by another employee. Mr. Gaitan says that these actions were discriminatory because he was the only one to inspect a bus, and he is the only Colombian mechanic out of 5 first-class mechanics.

However, the record fails to show any discrimination from this assignment. First-class mechanics are necessarily qualified to perform the tasks of third-class mechanics, so one third-class assignment does not evince discrimination. This is bolstered by the fact that SEPTA assigned another first-class mechanic to perform the same task just four days later. The record is clear that Mr. Gaitan did not *want* to inspect the bus. But federal "law does not guarantee a utopian workplace . . . . If the workplace is unsavory for any reason other than hostility generated on the bases of race, gender, ethnicity or religion, no federal claim is implicated." *Waite v. Blair, Inc.*, 937 F. Supp. 460, 468 (W.D. Pa. 1995) (quoting *Vore v. Indiana Bell Tel. Co.*, 32 F.3d 1161, 1162 (7th Cir. 1994)). That Mr. Gaitan was told to do something he was qualified to do, and then told to do it correctly after he did not perform his task to the satisfaction of his superior, is not discriminatory. This claim therefore fails to show an adverse employment action and thus fails to make the prima facie showing.

## B. Overtime Denial

Shortly after the 2014 bus incident, Mr. Gaitan claims that his overtime was denied. He claims that he was given about 20% less overtime than another employee, which amounts to discrimination. Mr. Gaitan points to his coworker, Dave Hudson, who received 1,187 hours of overtime over a three-year period, while Mr. Gaitan received only 916.5. *See* Motion for Summary Judgement at 18. It is questionable whether receiving 20% less overtime than other employees is sufficient to qualify as an adverse employment action, but the facts here make it clear that Mr. Gaitan was treated favorably. Mr. Gaitan received the second most overtime between 2013 and 2015 out of the 5 first-class mechanics. Out of the overtime allotted to first-class mechanics, Mr. Gaitan received 30% of it.[1]

Disregarding these facts, Mr. Gaitan focuses on the *one* other employee received more overtime than he did, but neglects to discuss the three employees that he outpaced in overtime hours. Mr. Gaitan cannot hope to defeat summary judgment by finding the one employee who was treated more preferably than he was. If that satisfied the requirement of an adverse employment action, any employee who was not "number one" in a given metric like overtime, pay, or benefits could establish a prima facie case. That cannot be what Congress sought to control with Title VII. Given that Mr. Gaitan has not met the requirement of demonstrating more favorable treatment by other employees, or that his assignment of overtime hours constituted an adverse employment action, this argument fails to make a prima facie showing.

## C. Denial of Training

Mr. Gaitan next argues that he was denied opportunities for training because he is Colombian-American. This argument was not discussed in Mr. Gaitan's briefing, and amounts to a single statement in Mr. Gaitan's deposition where he claimed to ask his supervisor for training

---

[1] This means Mr. Gaitan received 50% more than an even distribution would demand.

twice, but never received it. This was likely not pressed in his briefing because the record shows Mr. Gaitan attended a number of different trainings—eight overall between 2004 and 2015, and no evidence on the record shows that Mr. Gaitan was denied any opportunities to attend training (save his one assertion in his deposition). Mr. Gaitan has not pointed to any other similarly situated individuals who received training at a greater rate than he did, nor did he point to any expressions of discriminatory animus on the part of his employers. Employers are not required to give training simply because an employee asks for it. Mr. Gaitan must show some indicia of discrimination, whether it be statements of animus, different treatment than co-workers, or something of the sort. He has not done so here, and therefore has not shown that his denial of training was an adverse employment action.

### D. Removal of Locker

Mr. Gaitan's last Hail Mary attempt is to argue that he was ordered to remove an unauthorized locker from his workplace when personal refrigerators were allowed in the same workplace. Mr. Gaitan is unclear about how this is discriminatory, but seems to argue that it is unreasonable to allow refrigerators[2] but not extra lockers. Mr. Gaitan has shown no animus here. He has also failed to show that other employees were allowed to have lockers when he was not. This argument similarly lacks merit. Given that Mr. Gaitan has failed to meet the prima facie requirements for a claim of discrimination on the basis of national origin, the motion for summary judgment is granted on this claim.

### II. Hostile Work Environment

Mr. Gaitan also brings a hostile work environment claim. He must show that "(1) [he] suffered intentional discrimination because of [his national origin], (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected the plaintiff, (4) the

---

[2] Mr. Gaitan was permitted to have a refrigerator at work.

discrimination would detrimentally affect a reasonable person of the same [national origin] in that position; and (5) the existence of respondeat superior liability." *Spain v. Gallegos*, 26 F.3d 439, 447 (3d Cir. 1994). Mr. Gaitan has failed to show that discrimination by his co-workers was pervasive and regular.[3] Mr. Gaitan has only brought forth evidence of one altercation with a co-worker. In February of 2016, Mr. Gaitan claimed that the heat in the shop reached "unbearable" levels. To combat the high heat, Mr. Gaitan opened a door to the outside, resulting in a confrontation with a co-worker over workplace temperature where the co-worker tore a keyboard out of Mr. Gaitan's hands.

This one isolated incident is insufficient to show a hostile work environment, so this claim is similarly without merit. A hostile work environment requires the discrimination to be "pervasive and regular." *Gallegos*, 26 F.3d at 449. In *Gallegos*, the Third Circuit Court of Appeals noted that it was a jury question when the plaintiff alleged a pattern spanning five years. That created a question "as to the pervasiveness and regularity of" the conduct. *Id*. Here, there is simply one allegation of an employee (who was disciplined) engaging in an altercation with Mr. Gaitan. This comes nowhere near a pervasive and regular practice, and therefore summary judgment must be granted for SEPTA on this point.

Without a valid hostile work environment claim, there can be no claim of constructive discharge. A hostile work environment claim is a necessary predicate for a constructive termination claim. *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 718 (3d Cir. 1997) (Alito, J.); *see also Goss v. Exxon Office Systems Co.*, 747 F.2d 885, 888 (3d Cir. 1984). Therefore, the

---

[3] Given that the Court has already granted summary judgment on the discrimination claim, any argument Mr. Gaitan makes that his *supervisor* caused the hostile work environment similarly lacks merit. The showing required for a hostile work environment claim is higher than that required for discrimination because a hostile work environment claim hinges on a pervasive and regular practice of discrimination sufficient to alter the terms of employment. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)

motion for summary judgment is granted as to both the hostile work environment claim and the constructive termination claim.

### III. Retaliatory Discrimination

Finally, Mr. Gaitan contends that he was retaliated against for filing a discrimination complaint with the PHRC in September 2014. To make a prima facie case of retaliation, "a plaintiff must show that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the participation in the protected activity and the adverse action." *Carvalho*, 851 F.3d at 257 (citing *Moore*, 461 F.3d at 340–41).

Mr. Gaitan alleges that SEPTA retaliated against him by (a) requiring him to write reports in perfect English, despite his lack of writing proficiency, (b) disproportionately disciplining him for the February 2016 dispute with a co-worker, (c) assigning heavy duty work despite his chronic back problem, and (d) reducing his overtime hours.

#### A. Prima Facie Case

The dispute in each of these arguments swirls around whether SEPTA's actions constitute an adverse employment action. SEPTA concedes that Mr. Gaitan engaged in protected activity, but disputes that the actions were adverse employment actions.

Mr. Gaitan's first argument, that he was required to write reports in perfect English, fails to show any adverse employment action. Mr. Gaitan did not point to other employees who were allowed to write reports in broken English. Simply requiring an employee to perform tasks within his job description, as allegedly applied here, (and do them up to standards) is not discriminatory. The English-language requirement therefore fails to show any type of discriminatory animus.

Mr. Gaitan's second argument is that he was disproportionately disciplined for the February 2016 dispute with a co-worker in which they fought over the thermostat. Both Mr. Gaitan and the other employee received one step of discipline for the altercation. Mr. Gaitan argues that this was discriminatory because he should have received no discipline at all. The Court can only think of one word to describe the February 2016 dispute: silly. The supervisor likely had better things to do than deal with two quarreling adults acting like children.

Even when interpreting the conflicting testimony in Mr. Gaitan's favor, it fails to show that there was any discrimination. This was a small and isolated incident between two co-workers, and the disciplining supervisor was not present for the altercation. The equal discipline does not generate an inference in favor of discrimination—if anything, the equal discipline implies no discrimination by SEPTA. This argument fails to show that Mr. Gaitan was treated unfairly, which fails to qualify as an adverse employment action. This argument therefore also fails to make a prima facie showing.

Mr. Gaitan's third and fourth arguments for retaliation, however, satisfy the requirements of a prima facie case. Mr. Gaitan's third argument is that he performed a total of eight heavy duty assignments between January 1, 2013 and May 1, 2016. The other four mechanics performed 4, 8, 10, and 24 heavy duty assignments in the same period. SEPTA argues that this shows Mr. Gaitan was not treated differently than the other employees. Although these statistics are relevant, they do not end this deeply contextual inquiry. The factfinder must also consider the severity of Mr. Gaitan's back issues, the workload on the rest of the staff, and the rate of change of Mr. Gaitan's heavy duty assignments both before and after the complaint. However, the record is unclear how much these work assignments interfered with Mr. Gaitan's alleged back issues. Assuming that Mr. Gaitan's bad back was an issue as he claims, the assignment of heavy

duty work qualifies as an adverse employment action where Mr. Gaitan was treated differently. Therefore, this claim is sufficient to satisfy the prima facie case.

Mr. Gaitan also argues that he was denied overtime in retaliation for his PHRC complaint. The statistics support this to a certain extent. In the 13 weeks following his complaint, Mr. Gaitan had 16 hours of overtime, even though he had 126 hours of overtime that year. In other words, while he averaged 2.8 hours per week in overtime for 2014 before October, he averaged 1.2 hours per week (just 43% of his previous rate) immediately after filing his complaint in September. This is sufficient to make a prima facie showing of an adverse employment action where Mr. Gaitan was treated differently from similarly-situated individuals.

**B. Defense's Legitimate Non-Discriminatory Reason for Employment Actions**

Once Mr. Gaitan has met his burden of demonstrating a prima facie case, "the burden shifts to the employer to provide a legitimate non-retaliatory reason for its conduct." *Carvalho*, 851 F.3d at 257. Mr. Gaitan has made a prima facie showing for only two actions: increased heavy duty work and a denial of overtime.

Regarding the increased heavy duty work, SEPTA argues that the legitimate reason for the assignment of these jobs was an equal share of assignments. Similarly, SEPTA argues that the reason for the overtime hours was an equal rotation of employees, where overtime opportunities were rotated to give all employees an equal chance at overtime.[4] Therefore, SEPTA argues that one specific slice of time is simply indicative of the rotation, not of any assignment animus. These explanations are legitimate and non-discriminatory, and satisfy SEPTA's burden at the second stage of the *McDonnell Douglas* burden shifting framework.

---

[4] This was the subject of debate at oral argument, with both sides vacillating between explaining it as a rotation system, a "wheel" system, and as a seniority system. In any characterization, all sides agreed that there was a method to dole out overtime in a systematic manner.

13

### C. Plaintiff's Burden to Show Retaliation was the Real Reason for the Adverse Employment Action

Once the employer succeeds in showing a legitimate non-retaliatory reason for its conduct, then the burden shifts back to Mr. Gaitan "to convince the factfinder both that the employer's proffered explanation was false . . . and that retaliation was the real reason for the adverse employment action." *Moore*, 461 F.3d at 342. Mr. Gaitan "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764.

As discussed above, the evidence of Mr. Gaitan's assignment of heavy duty work is statistically ambiguous, and his overtime hours immediately following his complaint were reduced by 57%.[5] Both of these relatively weak inferences of disparate treatment could be explained in other ways. (SEPTA has explained them by pointing to the rotation system.) However, Mr. Gaitan's claim of discrimination is buttressed by the fact that he claims his employer told him that he "deserved what he got" for filing a complaint with the PHRC. Ex. K, Plaintiff's Response to Interrogatory No. 8. This evidence is based on hearsay, and only can be considered by this Court if it is admissible at trial.

During oral argument, both sides argued about the admissibility of the statement, with SEPTA arguing that it met the definition of hearsay, and Mr. Gaitan arguing that it was not hearsay. Federal Rule of Evidence 801(c) defines hearsay as an out of court statement offered for the truth of the matter asserted. It is unclear whether this statement was offered for the truth of

---

[5] This reduction was also greater than his coworkers. Francis Henry averaged 1.1 overtime hours per week before October in 2014, and dipped to 1 hour a week afterwards. Dave Hudson averaged 5.7 hours per week and dipped to 3.9 hours per week (32% reduction). Eric Gary averaged 2.8 hours per week and *increased* to 3.7 hours per week.

the matter. It presumably would not be used by Mr. Gaitan to show that he indeed "deserved what he got" in the reduction of overtime hours, but rather to show that the declarant had a specific mental state.

However, the Court need not answer that question because Rule 801(d) exempts statements "offered against an opposing party" and "made by the party's agent or employee on a matter within the scope of that relationship while it existed." Fed. R. Evid. 801(d)(2)(D). "Admissions by a party-opponent are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule." Fed. R. Evid. 801, advisory cmte. note (2014) (citing Strahorn, *A Reconsideration of the Hearsay Rule and Admissions*, 85 U. PA. L. REV. 484, 564 (1937)). Neither side disputes that the declarant in question, Ralph Jones, was an employee discussing assignment of overtime, a matter related to the scope of the employment.[6] This statement, therefore, is admissible into evidence and the Court can consider it at the summary judgment stage.

Such a statement (combined with the facts discussed above) constitutes the required "evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764. Therefore, the motion for summary judgment, insofar as it addresses (1) the retaliation claims of increased heavy duty assignments and (2) retaliation claims of decreased overtime, is denied.

---

[6] To satisfy this rule, the statement need not be in *furtherance* of employment, but need merely be relating to a matter within the scope of employment. For example, witnesses speaking against a company, if still employed by the company, fall under this rule. This is true even though the statements are undeniably *not* in furtherance of the employment arrangement. *See*, *e.g.*, *Lippay v. Christos*, 996 F.2d 1490 (3d Cir. 1993); *cf. United States v. Young*, 736 F.2d 565 (10th Cir. 1983).

## CONCLUSION

For the foregoing reasons, the motion for summary judgment is granted in part and denied in part. An appropriate order follows.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE